B.B. Finlay, formerly employed as a State Trooper by the Department of State Police of Louisiana, was killed in an automobile accident on the night of April 19, 1942, on Government Street in the City of Baton Rouge. His wife, the plaintiff herein, sues in her own behalf as well as in her capacity as natural tutrix of her two minor children, to recover damages from the Standard Accident Insurance Company, which carried public liability insurance on the automobile which ran into him and caused his death. The demand which is for $12,000 was rejected by the judgment of the lower court and she has taken this appeal.
The facts in the case which are more or less undisputed, except in one important and controlling particular, may be said to be substantially as follows:
The deceased State Trooper was on the night shift, his duties beginning at midnight. He lived at 5555 Government Street and each night he and a fellow trooper, W.W. McDonald, who lived next door to him, left their homes some time after eleven o'clock to report for duty at the police station which is situated on Foster Drive several blocks away from their homes. It was their custom to leave early enough to get to the station at about eleven-thirty. Their route took them west along Government Street to Foster Drive on which they turned directly north to the station.
On the night of the accident they left home as usual walking on Government Street along the north side of the sidewalk or shoulder abutting the paved portion of the street. It had rained prior to their leaving home and there were some puddles of water in the path along which they were walking. As they reached a point immediately opposite the Standard Sash Door Shop, about midway between Foster Drive and the next street east, Trooper Finlay in order to avoid walking into a mud puddle or a willow bush, stepped from the shoulder of the highway on which he was walking on to the paved portion of the street and was there struck by a car coming from the east with force sufficient to cause injuries from which he died a few minutes afterwards. *Page 303 
The driver of the offending car was a young man by the name of Sidney Louque, a soldier who was stationed at Camp Beauregard near Alexandria at the time. The car belonged to his brother-in-law, N.P. Arceneaux. There is no question about it being protected by the defendant insurance company and that if there is any liability this defendant should be made to answer up to the amount of its policy. There is some controversy over the amount of the insurance carried however, which, naturally, will have to be considered only in the event the judgment of the lower court be reversed and liability decreed.
In the car with young Louque were five other young people, three young men who were also in the service and two young ladies. The young men were Robert Naisinger (or Knopsfinger), Howard Myers and James Brown, and the young ladies were Miss Ruth Brown, James Brown's sister, and Miss Veda Jo. Wisdom, who since the accident has married James Brown. They had formed a party early in the afternoon apparently doing nothing much but ride around, and at eight o'clock or thereabout went to the Pelican Bar which is situated about two blocks, or to be exact, 484 feet further east on Government Street than the point of the accident. There is much testimony in the record concerning the amount of drinking they did and also about the condition of some of the young boys after the accident but, although young Louque freely admitted that he had had three or four highballs, it seems to be definitely shown that he was not under the influence of what liquor he had drunk and that the accident was not attributable to his being intoxicated. Conceding that one or two of the other young boys may have been drunk, it has not been shown that their condition had anything to do with the happening of the accident.
The usual charges of negligence that are found in cases of this kind are made against the driver of the automobile: That he was driving at an excessive rate of speed in violation of the city ordinance and the state law; that he was not keeping a proper lookout; that he was driving a car in an intoxicated condition; that he never tried to avoid running into the deceased when he had the opportunity of doing so and charges of a similar nature. The defense, on the other hand, is that there was no negligence on his part and the further affirmative defense that through his own negligence the deceased left his place of safety where he was walking on the shoulder of the highway and stepped on to the vehicular travel portion of the street almost directly in the path of the automobile, and that as there were cars approaching from the opposite direction, it was impossible for the driver to turn to his left and avoid striking him.
As stated at the beginning, the facts are hardly disputed save as to one vital particular and that is with reference to the distance the car was from the deceased at the time he stepped on to the vehicular portion of the street. Much testimony was taken on the point as to whether he left the shoulder to avoid a mud puddle or a willow bush, all of which seems immaterial as the real point to be considered is that he left the shoulder and stepped on to the street where he was hit. The object of it all, no doubt, was to discredit the testimony of State Trooper McDonald, who in his first statement to the police on the night of the accident said that Finlay had stepped to the side to avoid a mud puddle then changed that to the willow bush story. Trooper McDonald is the only eyewitness who testified on behalf of the plaintiff and unfortunately his testimony is weakened by the fact that he gave statements at the time the accident happened which definitely would absolve the driver of the car from negligence and assumed a different attitude as a witness at the trial of the case.
But from his own statement on the witness stand the situation was one in which it became impossible, in our opinion, for the driver of the car to have avoided the accident. He says that he and Finlay were walking in single file and that when they reached this willow bush which he spoke about, Finlay who was ahead of him some two or three steps, got off the shoulder in order to avoid stepping into the bush and got on the elge of the pavement about one foot from the shoulder. He himself was getting ready to do the same thing in order to avoid the willow bush but before doing so he did the prudent and proper thing which apparently Finlay had not done. He looked behind to see if there was a car approaching. He says no horn was blown and that is admitted, but, he says, when he turned around to look for an approaching *Page 304 
car, the one which struck Finlay was then five or six feet from him. He just had time enough, he says, to see it and turn around. Now, granting that Finlay had taken two or three steps ahead of him as he says, which would place him ten to twelve feet further, at the most, and that at that moment the car was six feet from him (McDonald), that would mean that it was no more than eighteen to twenty feet from Finlay when Finlay stepped on to the pavement. Undoubtedly then this car was too close to this unfortunate man for him to step from his place of safety at that moment without taking the simple precaution, like his companion did, of looking behind to see if there was any traffic approaching on the street. Regardless of the rate of speed Louque was going at the time, the accident, in our opinion, became inevitable unless it be that he either could have turned to his left or right in order to avoid running into him. For him to have turned to his right would have endangered the lives of both men and, although it is a disputed fact as to how many cars were approaching from the opposite direction, it nevertheless is true that there was at least one and that made it impossible for him to turn to his left at the moment.
These are the controlling facts in the case and it strikes us that in the short distance ahead of him, the driver of the offending car had no opportunity whatever of seeing the deceased step from the shoulder of the road on to the vehicular traveled portion in time to take any precaution to avoid running into him. We do not think that blowing the horn of the automobile would have made a bit of difference, and certainly it is not the duty of a driver to give such a warning from the simple fact that he sees a pedestrian on the shoulder or sidewalk of the highway occupying a place of safety. Antoine v. Louisiana Highway Commission, La.App., 188 So. 443. Neither do we think he was driving at an excessive rate of speed and had he been going eighteen or twenty miles an hour instead of twenty-five or thirty as he admits, he could not have avoided the accident, considering the way in which it happened.
Much is said in argument by counsel for the plaintiff regarding the fact that Louque did not stop his car right at the point of the accident but drove on 340 feet to the end of the block, as far as Foster Drive, before turning around and coming back to see what had happened. This is no doubt to create the impression that either he had it in his mind to become a hit and run driver or that he wanted to get rid of the boys who were drunk in the car with him, thinking that that might complicate matters. The proper thing for him to have done would be to have stopped promptly, granting of course he had a place in which to do so. But even if he did drive this distance further down the street, the fact remains that he did turn around at the corner and come back to the scene of the accident immediately. Not only that, the girls in the car with him got out at the corner and showed their willingness to render what assistance they could, as they immediately went to a filling station to phone for an ambulance. Much is said also about one of the young men getting out of the car and having left the scene never to be heard of afterwards, but we do not see what connection that can have with the negligence of Louque, the driver of the car and with the actual happening of the accident.
The record is a very long one, but after all, the issue as we see it, is restricted to the one point whether the driver of the car should have seen these men and apprehended that they were in any danger sooner than he did. In our opinion, the danger presented itself at a moment when he was too close to them and had not time to act differently than he did. Had the deceased taken a little more precaution as his companion did, undoubtedly, in our opinion, the accident would not have happened. We agree with the trial judge that plaintiff has failed to show any negligence on the part of the driver of the insured automobile and that consequently there is no liability on the part of the defendant.
Judgment affirmed. *Page 342